IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:12-CR-00292-BR<br>(3:16-CV-00468-BR) |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| SID EDWARD WILLIS, JR., | |
| Defendant. | |

**BILLY J. WILLIAMS**
United States Attorney
**SCOTT M. KERIN**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1000

       Attorneys for Plaintiff

**JAMES F. HALLEY**
735 S.W. First Avenue
2nd Floor
Portland, OR 97204
(503) 295-0301

       Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Sid Edward Willis's Motion (#91) to Vacate or Correct Sentence under 28 U.S.C. § 2255, Defendant's Amended Motion (#99) to Vacate or Correct Sentence under 28 U.S.C. § 2255, and Defendant's Motion (#134) for Evidentiary Hearing. For the reasons that follow, the Court **DENIES** Defendant's Motions and **DECLINES** to issue a certificate of appealability.

## BACKGROUND

The Court takes the underlying facts from evidence admitted at the May 20, 2013, evidentiary hearing on Defendant Sid Edward Willis's Motion to Suppress and from the case record.

On May 24, 2012, Greg Morris and his girlfriend, Clarisse Smith, drove to a Plaid Pantry market in Southeast Portland. Morris went into the Plaid Pantry, and Smith remained in the car. Several minutes later Smith went into the market and told Morris that Defendant had made threatening statements to Smith while displaying a handgun, and Defendant had asked Smith why Morris was "mugging" him (*i.e.*, giving Defendant a "weird look"). When Morris exited the Plaid Pantry, Defendant and another man approached Morris. Defendant pulled a handgun from his side pocket and pointed it at Morris's chest. Defendant asked Morris why he was "mugging" him and stated "you can't be mugging me.

I'll kill you. I'm a gangsta." Defendant then demanded Morris drive him to S.E. 102nd Street.

Morris and Smith, however, were able to get away from Defendant and to call 911. When officers arrived, Defendant fled the Plaid Pantry parking lot, but he was ultimately detained a short distance away. A police officer then brought Morris to the area where other officers had detained Defendant. Morris positively identified Defendant as the man who threatened him with a gun and stated: "I guarantee that's the guy." In addition to Morris's identification of Defendant, an officer who reviewed the surveillance video footage at the Plaid Pantry testified the video showed Defendant pointing his gun at Morris.

On June 5, 2012, Defendant was charged in an Indictment with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).

On May 10, 2013, Defendant filed a Motion to Suppress Evidence. On May 20, 2013, the Court conducted an evidentiary hearing, heard oral argument on the Motion to Suppress, and denied Defendant's Motion for the reasons stated on the record.

On July 22, 2013, Defendant pled guilty at a change-of-plea hearing.

In his Plea Agreement Defendant agreed he "waive[d] the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or

sentence on any grounds, except on grounds of ineffective assistance of counsel." At the change-of-plea hearing the Court explained to Defendant that he was waiving his right to collaterally attack his sentence on any ground other than ineffective assistance of counsel, and Defendant stated he understood. Defendant also agreed he "freely and voluntarily accept[ed] the terms and conditions of th[e] plea offer." The Court concluded it was "satisfied [Defendant is] fully competent . . . and he is making a knowing, intelligent, and voluntary waiver of [his] rights."

On December 23, 2013, the Court sentenced Defendant to a term of 180 months imprisonment followed by three years of supervised release.

On December 24, 2013, the Court entered a Judgment.

On December 26, 2013, Defendant filed an appeal of his conviction with the Ninth Circuit.

On July 29, 2015, the Ninth Circuit affirmed Defendant's conviction for Felon in Possession.

On March 14, 2016, Defendant filed a *pro se* Motion (#91) to Vacate or Correct Sentence under 28 U.S.C. § 2255 in which he alleges he received ineffective assistance from his trial counsel, Bear Wilner-Nugent.

On June 7, 2016, Defendant filed a *pro se* Amended Motion (#99) to Vacate or Correct Sentence under 28 U.S.C. § 2255 in

which he continues to assert he received ineffective assistance from Wilner-Nugent. Defendant also asserts he was subjected to selective prosecution because of his race and that the prosecutor violated his due-process rights when he failed to correct what Defendant believes was false testimony by Portland Police Officer Kimberley Hubbard at the suppression hearing.

On July 6, 2016, the Court entered an Order in which it directed Wilner-Nugent to submit information pertinent to Defendant's § 2255 Motions.

On July 27, 2016, Wilner-Nugent filed a Declaration in response to the Court's July 6, 2016, Order.

On September 16, 2016, the Court appointed James Halley as defense counsel.

On March 20, 2017, Defendant's counsel filed a Memorandum in Support of Defendant's § 2255 Motions. The Court took Defendant's Motions to Vacate or Correct Sentence under advisement on May 1, 2017.

On May 24, 2017, Defendant filed a *pro se* Motion for Evidentiary Hearing related to his Motions to Vacate or Correct Sentence.

## STANDARDS

The Supreme Court has established a two-part test to determine whether a defendant has received constitutionally

deficient assistance of counsel. *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). *See also Strickland v. Washington*, 466 U.S. 668, 678, 687 (1984). Under this test a defendant must not only prove counsel's assistance was deficient, but also that the deficient performance prejudiced the defense. *Premo*, 131 S. Ct. at 739. *See also Sexton v. Cozner,* 679 F.3d 1150, 1159 (9th Cir. 2012); *Ben-Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012).

"To prove deficiency of performance, the defendant must show counsel made errors so serious that performance fell below an objective standard of reasonableness under prevailing professional norms." *Mak v. Blodgett*, 970 F.2d 614, 618 (9th Cir. 1992)(citing *Strickland*, 466 U.S. at 687-88)). *See also Sexton*, 679 F.3d at 1159 (citing *Premo*, 131 S. Ct. at 739). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. *See also Detrich v. Ryan*, 677 F.3d 958, 973 (9th Cir. 2012). There is a strong presumption that counsel's assistance was adequate. *Strickland,* 466 U.S. at 689. *See also Sexton*, 679 F.3d at 1159. To overturn a guilty plea, the defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See also Smith v. Mahoney*, 611 F.3d 978, 988 (9th Cir. 2010).

6 - OPINION AND ORDER

To prove prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. *See also Sexton*, 679 F.3d at 1159-60. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695. *See also Sexton*, 679 F.3d at 1160.

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697. *See also Heishman v. Ayers,* 621 F.3d 1030, 1036 (9th Cir. 2010). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland,* 466 U.S. at 697. *See also Heishman*, 621 F.3d at 1036.

### DISCUSSION

As noted, Defendant moves to vacate or to correct his sentence on the grounds that (1) he was selectively prosecuted because of his race, (2) the prosecution violated his right to due process, and (3) he received ineffective assistance of counsel.

## I. Waiver of All Grounds Except Ineffective Assistance of Counsel

As noted, in the Plea Agreement Defendant waived his right to bring a § 2255 motion on any ground other than ineffective assistance of counsel. The Court engaged in a thorough colloquy with Defendant as to that fact, and Defendant indicated he understood.

Even if Defendant had not waived his right to assert other bases for collateral attack, the record does not support Defendant's claims. For example, Defendant asserts he was selectively prosecuted because he is African American and supports his allegation by pointing out that the individual he was with on the night in question, Alejandro Herrera, who is Hispanic, was not prosecuted. The record, however, reflects Herrera was not alleged to have possessed a firearm during the events that formed the basis for the charge of felon in possession, but Defendant possessed a firearm at that time.

Defendant also asserts the prosecutor violated Defendant's due-process rights by failing to correct Officer Hubbard's testimony at the suppression hearing as to which officers transported Defendant to the Multnomah County Detention Center (MCDC) after his arrest. Specifically, Officer Hubbard testified she and Officer Derek Carmon transported Defendant to MCDC after his arrest. Officer Carmon, however, did not remember taking Defendant to MCDC. In any event, the Court notes the issue of

8 - OPINION AND ORDER

which officers brought Defendant to MCDC after his arrest was not central or relevant to the crime charged, and the issue was explored adequately in direct testimony at the suppression hearing.

On this record the Court concludes Defendant waived all grounds to bring a § 2255 Motion except ineffective assistance of counsel and, in any event, Defendant cannot support any claim for selective prosecution or violation of his due-process rights.

**II. Ineffective Assistance of Counsel**

Defendant also moves to correct his sentence on the ground of ineffective assistance of counsel. Specifically, Defendant alleges Wilner-Nugent was ineffective when he (1) failed to impeach Officer Hubbard as to her testimony at the suppression hearing that she transported Defendant to MCDC, (2) failed to impeach Officer Hubbard as to his testimony about Defendant's personal property taken incident to his arrest, and (3) failed to call Officer John Andonian as a witness at the suppression hearing.

**A. Officer Testimony and Reports**

Officer Hubbard testified at the suppression hearing that she and Officer Carmon were dispatched on a call that a recent threat with a gun had been made at S.E. Division and S.E. 162nd Avenue on May 24, 2012, at 10:21 p.m. As Officers Hubbard and Carmon drove eastbound on S.E. Division, they saw two men

9 - OPINION AND ORDER

(Defendant and Herrera) who matched the descriptions of the suspects walking westbound on the opposite side of the street. Officer Carmon made a U-turn, turned on the emergency lights, and came to a stop pointing the vehicle at the two suspects. As the patrol car made the U-turn, Herrera remained standing on the sidewalk and Defendant moved behind some nearby bushes. Officers Hubbard and Carmon exited the patrol car. Officer Hubbard drew her gun on Herrera and ordered him to lie on the ground. Herrera complied with Officer Hubbard's directives, and Officer Hubbard "proned out" Herrera and handcuffed him. At the same time Officer Carmon looked into the bushes with his gun drawn and commanded Defendant to come out. Defendant crawled out of the bushes and complied with Officer Carmon's orders to lie on the ground. After Officer Hubbard handcuffed Herrera, she helped Officer Carmon handcuff Defendant and roll him onto his side to help him get up. When Defendant rolled onto his side, the officers found a small bag of white powder directly underneath Defendant, which they believed contained cocaine. While Officers Hubbard and Carmon were taking Defendant into custody, Officer John Billard looked in the bushes from which Defendant had emerged and found a revolver. Officer Hubbard, relying on the "BOEC print of officer activity," testified she and Officer Carmon then transported Defendant to the East Precinct and then to MCDC. Officer Hubbard also noted on a Force Data Collection

Report that she did not find any items of value other than the bindle of cocaine during her inventory of Defendant.

Officer Carmon's testimony at the suppression hearing regarding the events preceding and concurrent with the arrest of Defendant and Herrera is substantially similar to that of Officer Hubbard. Officer Carmon, however, testified Officers Billard and Andonian transported Defendant from the East Precinct to MCDC. Officer Carmon also testified on cross-examination that he took Defendant's shoes, money, cigarettes, and cell phone before he placed Defendant in the patrol car. Officer Carmon's Custody Report reflects Officers Billard and Andonian transported Defendant to MCDC, and Defendant "had no items of value on his person."

Officer Andonian's report of the incident does not reflect that either Officer Andonian or Officer Billard transported Defendant to MCDC.

### B. Impeachment of Officer Hubbard Regarding Transport of Defendant to MCDC

Defendant asserts Wilner-Nugent provided him with ineffective assistance of counsel when he failed to impeach Officer Hubbard regarding her testimony that she transported Defendant to MCDC.

Wilner-Nugent testifies in his Declaration that he "was [never] presented with evidence to support a good-faith belief that the officers were not telling the truth in their police

11- OPINION AND ORDER

reports or on the witness stand about which officer transported [Defendant] to which destination at which time." Decl. of Bear Wilner-Nugent at ¶ 7. In addition, Wilner-Nugent notes the thrust of the Motion to Suppress filed on Defendant's behalf was that Defendant "was arrested based on insufficiently personalized factors. . . . The purportedly bad impeachment was orthogonal to this argument at the suppression hearing." Id. at ¶ 8.

The record reflects the minor issues that Defendant raises about Officer Hubbard's testimony regarding which officers transported Defendant after his arrest are irrelevant to the issues the Court considered when deciding Defendant's Motion to Suppress; the Court, in any event, addressed the discrepancies during the suppression hearing; and the Court, well aware of the variations in the witnesses' testimony, did not find any indication of untruthfulness:

> I expect that witnesses to the same event will often have different perspectives, and this case isn't any different. We have minor variations among the accounts of the officers and even the defendant's account. But fundamentally consistent from the testimony of the officers and even from the defendant's testimony to the extent he chose to share it with me.
>
> * * *
>
> I find all of the witnesses testified truthfully, to the best of their knowledge. . . . The officer, I have no reason to distrust, other than in the normal run of human encounters, people remember details; some don't. One officer writes down 20:51 hours when it's 22:51 hours. There are human errors inherent in their accounts. But

12- OPINION AND ORDER

>           nobody is lying to me about the key facts here,
>           and I accept the key presentation as true.

Evid. Hearing Tr. (#49) at 112-13.

The Court concludes on this record that Defendant has not established defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms with respect to the impeachment of Officer Hubbard as to her testimony relating to Defendant's transport to MCDC.

    **C.    Impeachment of Officer Hubbard Regarding Personal Property Taken from Defendant**

Defendant asserts he received ineffective assistance of counsel when Wilner-Nugent failed to impeach Officer Hubbard with the testimony and reports of Officer Carmon as to when or what property was removed from Defendant. Wilner-Nugent testifies in his Declaration that this evidence was also "orthogonal to [Wilner-Nugent's] argument at the suppression hearing," and, in any event, "Officers Hubbard and Carmona [sic] testified consistently and believably as to the nature of the personal property that they seized from Mr. Willis incident to arrest." Wilner-Nugent Decl. at ¶ 8.

As with Defendant's assertion of ineffective assistance of counsel regarding his transportation to MCDC, the record reflects Officer Hubbard's testimony regarding the items of personal property that were seized from Defendant is irrelevant

13- OPINION AND ORDER

to the issues the Court, in any event, considered when deciding Defendant's Motion to Suppress; the Court addressed the discrepancies during the suppression hearing; and the Court, well aware of the variations in the witnesses' testimony, did not find any indication of untruthfulness.

The Court concludes on this record that Defendant has not established defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms with respect to impeachment of Officer Hubbard relating to the items of personal property that were seized from Defendant.

### D. Failure to Call Officer Andonian as a Witness

Finally, Defendant asserts he received ineffective assistance of counsel when Wilner-Nugent failed to call Officer Andonian as a witness at the suppression hearing. Defendant contends Officer Andonian would have contradicted Officer Carmon's testimony and report that Officers Andonian and Billard transported Defendant to MCDC.

Wilner-Nugent testifies in his Declaration that he is "unaware of any reason why Officer Andonian would have been a helpful witness for the defense. Additionally, [his] notes do not reveal any information supplied by Mr. Willis before the suppression hearing that would have suggested anything to the contrary." Wilner-Nugent Decl. at ¶ 9.

14- OPINION AND ORDER

As noted, the issue of which officers transported Defendant to MCDC was tangential and irrelevant to the issues the Court considered at the suppression hearing, and the Court addressed the discrepancies in the officers' testimony at the hearing. The Court, therefore, concludes on this record that Defendant has not established defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms when he declined to call Officer Andonian as a witness at the suppression hearing.

Accordingly, the Court concludes Defendant did not receive ineffective assistance of counsel, and, therefore, the Court denies Defendant's Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255 and Defendant's Amended Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255.

### III. Evidentiary Hearing

Defendant moves for an evidentiary hearing to support his Motions to Vacate or Correct Sentence.

An evidentiary hearing "is not automatically required on every section 2255 petition." *Baumann v. United States*, 692 F.2d 565, 570-71 (9th Cir. 1982). *See also United States v. Reyes-Bosque*, 624 F. App'x 529, 530 (9th Cir. 2015)(same). A hearing is not required when "the files and records conclusively show that the movant is not entitled to relief," *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998), or when the

15- OPINION AND ORDER

"record is sufficiently developed for the court to conclude that their claim lack[s] merit." *Joseph v. United States*, 583 F. App'x 830, 831 (9th Cir. 2014).

"To earn the right to a hearing" the defendant must allege "specific facts which, if true, would entitle him to relief." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996). *See also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003)(an evidentiary hearing is required only when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted")(internal quotation marks and citation omitted). "[B]ald, conclusory or inherently incredible assertions" do not require an evidentiary hearing. *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004).

The Court finds the files and records in this matter conclusively establish Defendant is not entitled to relief and the record is sufficiently developed for the Court to conclude that Defendant's claims lack merit. Accordingly, the Court denies Defendant's Motion for Evidentiary Hearing.

## CONCLUSION

For these reasons, the Court **DENIES** Motion (#91) to Vacate or Correct Sentence under 28 U.S.C. § 2255, **DENIES** Defendant's Amended Motion (#99) to Vacate or Correct Sentence under 28 U.S.C. § 2255, and **DENIES** Defendant's Motion (#134) for

16- OPINION AND ORDER

Evidentiary Hearing.  The Court finds Defendant has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court **DECLINES** to issue a certificate of appealability.

IT IS SO ORDERED.

DATED this 9th day of June, 2017.

_____
ANNA J. BROWN
United States District Judge